In re Patricia A. THOMPSON, Debtor.

No. 12–60813.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Signed July 28, 2014.

**106.** See 28 U.S.C. § 1920.

Pamela Arndt, Columbus, OH, for Asst. U.S. Trustee.

Frederick M. Luper, Kenneth M. Richards, Columbus, OH, for Frederick M. Luper, Trustee.

Michael T. Gunner, Hilliard, OH, for Debtor.

## *MEMORANDUM OPINION AND ORDER GRANTING THE UNITED STATES TRUSTEE'S MOTION TO DISMISS SUBJECT TO EXPRESSED TERMS AND CONDITIONS (DOC. NO. 38)*

CHARLES M. CALDWELL,
Bankruptcy Judge.

This Memorandum Opinion and Order serves as the Court's findings of fact and conclusions of law regarding the above-captioned Motion to Dismiss filed on behalf of the United States Trustee ("UST"). The Motion is based on section 707(b)(3) of the United States Bankruptcy Code ("Code"). The UST claims that Patricia A. Thompson ("Debtor") has sufficient net monthly income to pay her debts, and that a Chapter 7 discharge constitutes abuse.

Based on the evidence, including credibility assessments, the Court finds and concludes that the Debtor has sufficient net monthly income to fund a Chapter 13 plan of repayment, and that she has not been completely candid in her disclosure of

assets. For these reasons, the Court has concluded that the UST sustained its burden, and that this case is subject to dismissal for reasons that follow.

The Debtor filed her Chapter 7 case on December 24, 2012. The Debtor's initial Schedules reported that she was unemployed and projected receipt of $1,732.00 in monthly unemployment benefits. No secured debts were scheduled, but the Debtor listed $202,889.66 in unsecured debt. The Debtor also scheduled two minor dependents. The Debtor has filed two previous Chapter 13 cases. The Court dismissed the first case (09–58239) because the Debtor could not complete payments on her post-petition child support arrearage. The Court dismissed the second case (12–52547) when it determined that the failure to obtain timely extension of the stay diminished the benefit of continuing the case, and due to the Trustee's inability to verify the payment of post-petition domestic support obligations.

On July 2, 2013, the UST filed the instant Motion to Dismiss on the basis that under the totality of circumstances, the Debtor has the ability to repay creditors from net monthly income. The UST contended that the Debtor could repay her creditors because she found gainful employment, and was no longer receiving unemployment compensation. The UST calculated that the Debtor had at least $1,155.00 in net monthly income to repay creditors.

On September 3, 2013, the Debtor amended her Schedule I to report that she obtained employment (changing her net monthly income from $1,732 to $6,854.16). The Debtor also amended Schedule J to increase her monthly expenses from $5,702 to $6,760. Further, the Debtor responded to the UST's Motion to Dismiss, arguing that she had significant child support arrearages, and that her employment is only contractual and subject to termination at any time.

At trial, Erik Van Bramer, Paralegal Specialist with the office of the UST, testified regarding the Debtor's financial condition, stating that she had a history of high income. Indeed, based on Debtor's deposition testimony, Mr. Van Bramer stated that he adjusted his analysis of Debtor's monthly income and expenses. Specifically, he increased her income to reflect new employment in the net monthly amount of $6,857.38, and he decreased expenses from the scheduled sum of $6,760.00 to $4,789.50. The expense adjustments included reductions for property, auto, health and liability insurance, childcare and child support. As a result, Mr. Van Bramer testified that the Debtor had $2,068.00 in net monthly income available to pay creditors.

Mr. Van Bramer also testified that he calculated Debtor's net monthly income without considering any child support arrearage, and used the $685.00 monthly amount Debtor paid in child support, according to deposition testimony. When questioned whether Debtor's monthly child support payments should be $1,703.00 per month, Mr. Van Bramer testified that he found this figure in Debtor's Schedule J, but never received documentation that supported actual payment of this amount. Finally, during cross-examination Mr. Van Bramer acknowledged that if the Debtor relied solely on unemployment income, she would not be able to fund a Chapter 13 plan.

Turning to the Debtor's actions in this case, Mr. Van Bramer testified that he found misstatements and discrepancies in Debtor's Schedules and Statement of Financial Affairs. For example, Mr. Van Bramer testified that the Debtor used an American Express Card for personal expenses, but did not include this debt on

her Schedules. Additionally, Mr. Van Bramer testified that the Debtor used a $13,000 refund from her last Chapter 13 case to prepay apartment rent. The Debtor did not disclose this transaction the Statement of Financial Affairs.

In response, Debtor testified that she divorced her husband in February 2008, and her divorce attorney requested an $800.00 court-ordered monthly child support payment, but that the Domestic Relations Court ordered $1,703.00 per month. The Debtor testified that she challenged this Order, but the modification process has been difficult and frustrating. Additionally, the Debtor testified that her estimated child support arrearages were between $70,000.00 and $80,000.00.

Testifying about her income, the Debtor worked as a project manager in the field of information technology. She served as an independent contractor for the company Fast Switch, under its agreement with Cardinal Health. This work involved a nuclear pharmaceutical project that had been in development for 3 years. At the time of trial, the Debtor's bank records reflect net monthly wages of $9,651.40. The Debtor testified that her contract position was only budgeted through June 2014.

When not working under contract, the Debtor testified that she receives unemployment insurance, but to pay child support this income is subject to garnishment, resulting in a fifty percent income reduction. The Debtor, however, did not dispute the UST's calculation that when she is working as a contract employee, she has approximately $2,000.00 in net income per month that would be available to fund a Chapter 13 plan. In addition, the Debtor's Statement of Financial Affairs showed $166,968.00 as the most recent year to date income.

Regarding her Schedules, the Debtor acknowledged not listing all of her property. However, she testified that the omissions were not intentional. The Debtor conceded that she prepaid apartment rent with the refund from her previous Chapter 13 case. Indeed, when the Chapter 7 Trustee in this case tried to recover that rent pre-payment, the Debtor sold a garden tractor to raise the funds. The Debtor admitted that she did not list this tractor on her Schedules or update the Schedules after the sale. Further, while the Debtor was on the stand, she disclosed for the first time that she held college savings accounts in trust for her children. ($25,000.00 in qualified state tuition plans per 26 U.S.C. § 529(b)(1)).

At the conclusion of the trial, the Court ordered the Debtor to update her Schedules and set a continued hearing to learn whether she made any progress contesting the support payment amount. At that hearing, the Court learned that the Debtor's payment challenge ended with a continuance and no resolution, and that the contract position at Cardinal Health ended. In addition, at the direction of the Court the parties filed hypothetical Chapter 13 plans of repayment, demonstrating how the Debtor might attempt debt reorganization under Chapter 13.

The hypothetical plan filed by the UST provides unsecured creditors a recovery of 2.8%, with a possible increase to 14.5% after claim objections. This plan, however, includes income the Debtor was receiving when serving as a Cardinal Health contract employee. On the other hand, the Debtor based her hypothetical plan solely on unemployment income, and offered no payment to creditors. This plan reflects that indeed the Debtor's income does fluctuate considerably. However, as noted by the UST, plan modifications or plan payment suspensions, may address

periods of unemployment historically experienced by the Debtor. Further, according to the Debtor's most recent filing, she began another contract position, in an undisclosed amount, on May 12, 2014.

■ Turning to the legal issues presented, section 707(b)(1) of the Code provides for dismissal of Chapter 7 cases, or consensual conversion to Chapter 13, if the Court finds that abuse exists. The UST does not claim in the instant case that the presumption of abuse arises under section 707(b)(2)(A)(i) of the Code, and instead argues that the totality of circumstances, including Debtor's ability to repay creditors a significant amount, requires dismissal under section 707(b)(3). *See In re Phillips,* 417 B.R. 30, 44 (Bankr.S.D.Ohio 2009). The UST must prove that abuse exists by a preponderance of the evidence. *In re Tucker,* 389 B.R. 535, 538 (Bankr. N.D.Ohio 2008).

■ Deciding whether abuse exists requires the Court take a wide-ranging view of debtors' financial circumstances, including: accounting for pre-petition circumstances, debtors' reporting of their financial condition at the time of filing, postpetition changes and ability to provide some repayment to creditors. *In re Pittman,* 506 B.R. 496, 499 (Bankr.S.D.Ohio 2014); *In re Goble,* 401 B.R. 261, 276 (Bankr.S.D.Ohio 2009). Further, the Court must also assess whether the debtor, through filing, seeks an unfair advantage over creditors, or whether the debtor's "relationship with ... creditors has been marked by essentially honorable and undeceptive dealings." *In re Weixel,* 494 B.R. 895, 901–03 (6th Cir. BAP 2013).

■ Central to the determination of abuse in this case is whether the Debtor has the income, and the reasonable expectation of continuing income, so that she could fund a Chapter 13 plan of repayment. *See Phillips,* 417 B.R. at 39–40 (holding that projected income is essential to evaluate a debtor's ability to pay). The UST presented credible evidence that when employed, the Debtor may have approximately $2,000.00 in net income each month, based upon her recent work history.

Next, turning to Debtor's conduct in this case and with creditors, the UST contends that the Debtor's actions in this case indicate an absence of good faith and candor. The UST points to the Debtor's multiple amendments of her Schedules and her failure to provide full disclosure of assets and liabilities. In response, the Debtor maintains that she does not live an exorbitant lifestyle, there is no clear evidence of deceptive dealings between the Debtor and creditors, and that her Schedules do not indicate an attempt to avoid a large, single debt.

A review of the evidence and the legal standards, lead the Court to find and conclude that the UST met its burden of proof by a preponderance of the evidence. The Court finds and concludes that the Debtor has, when working as a contract technology employee, significant excess net monthly income to fund a modest repayment plan to creditors. The Debtor was not able to rebut this evidence, and only demonstrated that when unemployed her income significantly decreases. However, even with her history of periodic unemployment, the Debtor is highly skilled in information technology, and has a history of significant income when working as a contract employee in this field.

Debtor testified that she had a significant child support arrearage and that she had high monthly child support payments, but did not rebut the evidence presented that indicated she had not paid these amounts in the past. Further, in Chapter 13 the Debtor could retain counsel and

renew efforts to seek support payment reductions in state court, if indeed the amount is too high. As an alternative, some relief may be possible through the claims objection process.

Further, the UST presented credible evidence that in prosecuting this case the Debtor has not been candid in the preparation of her Schedules and Statement of Financial Affairs. As discussed above, the record is replete with undisclosed assets and transactions, including the lawn tractor, pre-paid rent and educational savings accounts.

For these reasons, within 30 days the Court will enter a separate order dismissing this case. Such dismissal may be with prejudice, considering the Debtor's conduct regarding asset disclosures. Prior to the expiration of this period, however, the Debtor may convert this case to Chapter 13.

**IT IS SO ORDERED.**